1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

14

SHAWN CHARLES GAINES,

15
                          Petitioner,

16
               v.

17
MAGGIE MILLER-STOUT,

18
                          Respondents.

19
20

Case No.  C04-5829RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**June 24ᵗʰ, 2005**

21        This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned

22 Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.

23                                    BASIS FOR CUSTODY

24        Petitioner is in custody pursuant to a 2001 Pierce County conviction for first degree robbery.

25 He was originally sentenced to 231 months but the sentence was overturned on direct appeal and

26 petitioner was re-sentenced to 204 months on March 21, 2003.  (Dkt. # 1, page 1).

27                                  SUMMARY CONCLUSION

28        Having reviewed the file the undersigned concludes that it is questionable whether this action

REPORT AND RECOMMENDATION
Page - 1

1  is exhausted, however, given recent Ninth Circuit opinions on what constitutes exhaustion the court

2  should decline to dismiss for failure to exhaust and reach the merits.  Contrary to petitioners

3  argument no evidentiary hearing is required and the sole issue raised in this petition, ineffective

4  assistance of counsel, is without merit.  The petition should be **DENIED.**

5  <u>FACTS</u>

6  The Washington Court of Appeals summarized the facts of Mr. Gaines' crime as follows:

7  Gaines robbed Tacoma Pipe-n-Tobacco on the evening of March 17,2000.
8  Jodi Chaney and Sarah Rutherford were working at the store. Chaney had begun
   counting money from the cash register and putting it into a cash box when Rutherford
   left to take out some garbage. Rutherford encountered Gaines in the doorway. He
9  wore dark jeans and a blue corduroy sport coat over a white tee shirt. Gaines asked
   what time the store closed. Rutherford answered and continued out with the garbage.
10 Gaines then covered his face with a gray scarf, entered the store, and approached
   Chaney.

11
12 Gaines set a gun on the counter and said, "This isn't a joke, give me all your
   money." RP at 132. Chaney hesitated, but Gaines picked up the gun and insisted,
13 "Give me all the money." RP at 133. Chaney opened the cash register, but most of the
   money was already in the cash box or the store safe. Gaines repeatedly demanded
14 more money and threatened to kill Chaney if she did not open the safe. She said all
   the money she had was in the cash box. Rutherford then returned to the store, and
15 Gaines grabbed the cash box and fled. Rutherford looked outside and saw that Gaines
   ran south on Lawrence Street. She called the police.

16 Tacoma police officer Donald Stodola learned from the dispatch radio that a
17 black man wearing a dark coat had just robbed a store, was carrying a gun and a cash
   box, and was heading south on Lawrence Street. Stodola immediately drove through
   that area. After searching for a few minutes, the only people he observed in the area
18 were two black men in a car that fishtailed around a coner with its tires squealing and
   its headlights off, despite darkness. Stodola stopped the car and ordered the men: to
19 put their hands in the air. He told Gaines, the driver, that he was being stopped
   because he was leaving the area of a robbery.

20
21 When backup officers arrived, they removed Gaines and his companion from
   the car at gunpoint, handcuffed them, and placed them in separate patrol cars. Stodola
22 then obtained identification from the two men. He noticed that Gaines was sweating
   even though he wore only a white tank top and the temperature was 40 degrees.
   Stodola learned that someone had reported a possible auto theft involving the car
23 Gaines was driving. Stodola initiated a registration check on the car and learned that
   Gaines was the registered owner. Then, about 20 minutes after Stodola stopped
24 Gaines, Rutherford arrived and identified Gaines as the robber.

25 The State charged Gaines with first degree robbery, and Gaines moved to
   suppress the evidence obtained during the stop. The trial court denied the motion and,
26 after a trial, the jury convicted Gaines.

27 (Dkt. # 15,  Exhibit 4, Unpublished Opinion, <u>State v. Gaines</u>, Washington Court of Appeals Cause

28

No. 27421-3-II, at 1-3).

In denying the motion to suppress the trial court held that while counsel had checked a box on the omnibus form indicating an intention to move to suppress the evidence obtained at the stop counsel had failed to file a "formal motion, declaration or memorandum provided, which is required under CR 3.6." (Dkt. # 15, Exhibit 11 verbatim proceedings at 110-111).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Given the record in this case, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing. The court concludes that the Washington State Court of Appeals and the State Supreme Court did not error in denying petitioner an evidentiary hearing.

## PROCEDURAL HISTORY

Plaintiff was convicted after a jury trial and filed a direct appeal. He was originally sentenced to 231 months. On direct appeal the Washington State Court of Appeals upheld the conviction but determined the offender score used at sentencing was incorrect. The case was remanded and petitioner was re-sentenced to 204 months. (Dkt. # 1, page 1). No motion for discretionary review from the direct appeal was filed.

Petitioner filed a personal restraint petition in which he argued:

1.      Petitioners Due Process Rights were violated do to an impermissibly Suggestive identification.

REPORT AND RECOMMENDATION
Page - 3

2.      Petitioner received Ineffective Assistance of Counsel.

3.      The Court Erred by denying Petitioner Counsel to argue (sic) Motion for New Trial, Then denying said Motion.

(Dkt. # 15, Exhibit 6, at 3).  On March 31st, 2004 the petition was dismissed.  (Dkt. # 15, Exhibit 7). Petitioner, through counsel, filed a motion for reconsideration which the Washington State Supreme Court considered as a motion for discretionary review.  That motion presented the following issues:

1.      Whether Mr. Gaines Motion for Reconsideration should be granted based on indigence, lack of counsel, and inability to present the facts resulting in incarceration.

2.      Whether Mr. Gaines' Personal Restraint Petition should be granted when actual and substantial prejudice arose due to an impermissibly suggestive show up procedure.

3.      Whether Mr. Gaines received ineffective assistance of counsel due to his attorney's failure to suppress evidence obtained as a result of the impermissibly suggestive show up procedure.

4.      Whether Petitioner's Motion for New Trial should be granted based on ineffective assistance of counsel.

(Dkt. # 15, Exhibit 8, at 1-2).  On July 27th, 2004 the Washington State Supreme Court denied review.  (Dkt. # 15, Exhibit 9).

The current Habeas petition followed and petitioner argues:

Mr. Gaines' Sixth Amendment Right to Effective Assistance of Counsel Was Violated By Trial Counsel's Failure to Move to Suppress the Fruits of an Identification Procedure that was Unduly Suggestive and Violative of the Fifth Amendment's Due Process Guarantee. This Court Should Order an Evidentiary Hearing Because Gaines Previously Attempted to Develop the Relevant Facts in State Court But was Denied That Opportunity.

(Dkt. # 1 page 5).

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).  Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the

REPORT AND RECOMMENDATION
Page - 4

1    burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

2    §2254(e)(1).

3                                                    DISCUSSION

4          A.      Prior Rulings.

5          The Washington State Court of Appeals first decided petitioner's ineffective assistance of

6    counsel claim.  (Dkt. # 15, Exhibit 7).  The opinion of the Washington State Court of Appeals is the

7    most reasoned decision of the state courts.  That court stated:

8               Shawn C. Gaines seeks relief from personal restraint imposed following his
           conviction of first degree robbery.  Gaines contends the police used impermissibly
9          suggestive procedures during a pretrial showup, that his trial counsel was ineffective
           in failing to file a motion to suppress the pretrial identification, and that the trial court
10         erred in failing to grant him a new trial based on his allegedly ineffective trial counsel.

11              Gaines contends that Sarah Rutherford's pretrial and in-court identifications
           violated his constitutional rights because they were the product of an impermissibly
12         suggestive showup.  In considering the admissibility of a witness' identification
           evidence, and whether a witness may make an in-court identification after an earlier
13         identification, it must be determined whether the earlier identification procedure was
           "'so impermissibly suggestive as to give rise to a very substantial likelihood of
14         irreparable misidentification'".  *State v. McDonald*, 40 Wn. App. 743, 746
           (1985)(quoting *Simmons v. United States*, 390 U.S. 377, 384 (1986)).  Gaines bears
15         the burden of showing that the identification procedure was impermissibly suggestive.
           *See State v. Vickers*, 148 Wn.2d 91, 118 (2002).  If he proves the procedure was
16         unnecessarily suggestive, the court then considers, based on the totality of the
           circumstances, whether the procedures created a substantial likelihood of irreparable
17         misidentification.  *Vickers*, 148 Wn. 2d at 118.

18              In rejecting Gaines's direct appeal, this court summarized the facts preceding
           the showup as follows:
19
20              Gaines robbed Tacoma Pipe-n-Tobacco on the evening of
           March 17,2000. Jodi Chaney and Sarah Rutherford were working at
21         the store. Chaney had begun counting money from the cash register
           and putting it into a cash box when Rutherford left to take out some
22         garbage. Rutherford encountered Gaines in the doorway. He wore
           dark jeans and a blue corduroy sport coat over a white tee shirt.
23         Gaines asked what time the store closed. Rutherford answered and
           continued out with the garbage. Gaines then covered his face with a
           gray scarf, entered the store, and approached Chaney.
24
25              Gaines set a gun on the counter and said, "This isn't a joke,
           give me all your money." RP at 132. Chaney hesitated, but Gaines
26         picked up the gun and insisted, "Give me all the money." RP at 133.
           Chaney opened the cash register, but most of the money was already in
27         the cash box or the store safe. Gaines repeatedly demanded more
           money and threatened to kill Chaney if she did not open the safe. She
           said all the money she had was in the cash box. Rutherford then
28

1    returned to the store, and Gaines grabbed the cash box and fled.
2    Rutherford looked outside and saw that Gaines ran south on Lawrence
     Street. She called the police.

3         Tacoma police officer Donald Stodola learned from the
     dispatch radio that a black man wearing a dark coat had just robbed a
4    store, was carrying a gun and a cash box, and was heading south on
     Lawrence Street. Stodola immediately drove through that area. After
5    searching for a few minutes, the only people he observed in the area
     were two black men in a car that fishtailed around a corner with its
6    tires squealing and its headlights off, despite darkness. Stodola
     stopped the car and ordered the men: to put their hands in the air. He
7    told Gaines, the driver, that he was being stopped because he was
     leaving the area of a robbery.
8
          When backup officers arrived, they removed Gaines and his
9    companion from the car at gunpoint, handcuffed them, and placed
     them in separate patrol cars. Stodola then obtained identification from
10   the two men. He noticed that Gaines was sweating even though he
     wore only a white tank top and the temperature was 40 degrees.
11   Stodola learned that someone had reported a possible auto theft
     involving the car Gaines was driving. Stodola initiated a registration
12   check on the car and learned that Gaines was the registered owner.
     Then, about 20 minutes after Stodola stopped Gaines, Rutherford
13   arrived and identified Gaines as the robber.

14        Gaines argues now that the facts surrounding the showup demonstrate that it
     was impermissibly suggestive.  He points out that the police told Rutherford as she
15   approached the area of the stop that two suspects had been found in a stolen car.  He
     also asserts that he and his companion were in police cars and handcuffed when she
16   arrived, and that after Rutherford asked to see Gaines a second time, the police told
     her to focus on his face.
17
          The State responds that the reference to suspects in a stolen car is not unduly
18   suggestive because it referred to two men and not just Gaines.  Similarly, the State
     argues that the presence of two suspects diminished the suggestiveness of Gaines
19   being handcuffed and in a police car when she arrived.  *See State v. Guzman-Curllar*,
     47 Wn. App. 326, 336 (1987)(Fact that suspect was handcuffed and standing near
20   police car does not demonstrate unnecessary suggestiveness).  The record shows that
     Rutherford immediately rejected the other suspect as the robber and asked to see
21   Gaines twice because he was not wearing the dark coat that the robber had been
     wearing.  Rutherford testified she was 90 percent certain that Gaines was the robber
22   after she first looked at him and 100 percent certain after her second viewing, which
     followed closely upon the first.  The fact that the police told her to focus on his face
23   when she remarked that his clothing was not the same does not make her second
     identification impermissibly suggestive.  *See McDonald*, 40 Wn. App. At 746 (finding
24   lineup impermissibly suggestive where a detective stated "this is the man").

25        Even if this court were to conclude that the showup procedure was
     impermissibly suggestive, the totality of the circumstances indicates little likelihood of
26   misidentification.  In determining the effect of a suggestive identification procedure,
     we consider the following factors:

27        [t]he opportunity of the witness to view the criminal at the time of the
28

REPORT AND RECOMMENDATION
Page - 6

crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *McDonald*, 40 Wn. App. At 746.

The record shows that Rutherford faced Gaines in the doorway of the store and spoke with him briefly. She then saw him, albeit with face covered, during the robbery and as he was running away. She accurately described his hairstyle, his facial hair, and his clothing to the police. She was 90 percent certain that Gaines was the robber after the police first showed him to her and then, after asking to see him once more, was 100 percent certain. Approximately 20 minutes elapsed between the crime and her identification. *See State v. Springfield*, 28 Wn. App. 446, 447 (1981) (Showup held shortly after crime is committed and in the course of prompt search for the suspect is permissible).

Because there is no evidence that Rutherford's pretrial identification was improper or unreliable, the trial court would not have granted a motion to suppress either the showup identification or Rutherford's subsequent in-court identification. Consequently, Gaines was not prejudiced by his attorney's failure to file a motion to suppress on the basis of the allegedly suggestive showup, and his claim of ineffective assistance of counsel fails. *See State v. McFarlane*, 127 Wn.2d 322, 334-35 (1995)(to show ineffective assistance of counsel, defendant must show that his attorney's deficient performance caused him actual prejudice).

Similarly, there was no abuse of discretion in the trial court's failure to appoint new counsel to argue Gaines's motion for a new tiral based on his claim of ineffective assistance or in its ultimate denial of Gaines's motion. *See State v. Stenson*, 132 Wn. 2d 668, 733 (1997)(decision to appoint new counsel rests within trial court's discretion); *State v. Rosborough*, 62 Wn. App. 341, 346 (1991)(rejecting contention that defendant's allegation of ineffective assistance, raised in motion for new trial, automatically requires the appointment of substitute counsel). Given Gaines failure to meet his burden of establishing ineffective assistance of counsel, there can be no error in the trial court's refusal to appoint new counsel or in its denial of a new trial.

(Dkt. # 15, Exhibit 7).

On motion for discretionary review the State Supreme Court did not directly deal with the ineffective assistance of counsel claim and instead affirmed the ruling from the Washington State Court of Appeals that the out-of-court identification was not impermissibly suggestive. (Dkt. # 15 exhibit 9). This ruling effectively disposed of any challenge to counsels performance as the court would have denied any motion brought to suppress the evidence. Thus, failure to bring such a motion did not prejudice the petitioner. See, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)(setting out the two prong test where petitioner must show the performance of counsel fell below an objectively acceptable level and petitioner was prejudiced).

REPORT AND RECOMMENDATION
Page - 7

1

        B.      Exhaustion.

2       The first issue for the court to consider is whether the issue raise in this petition has been

3   properly exhausted. In order to satisfy the exhaustion requirement, petitioner's claims must have

4   been fairly presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971);

5   Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  A federal habeas petitioner must provide

6   the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights.

7   Duncan v. Henry,  --- U.S. ---, 115 S.Ct. 887, 888 (1995).  It is not enough that all the facts

8   necessary to support the federal claim were before the state courts or that a somewhat similar state

9   law claim was made.  Id, citing Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459

10  U.S. 4 (1982).

11      The issue was raised in the Washington State Court of Appeals as a Federal Sixth

12  Amendment claim.  (Dkt. # 15, Exhibit 6 page 4).  Petitioner specifically stated he was raising the

13  issue as a violation of his "The Sixth Amendment Right to the Effective Assistance of Counsel."

14  (Dkt. # 15, Exhibit 6 page 4).  Thus, the Washington State Court of Appeals was aware it was

15  dealing with a federal claim.

16      At the Supreme Court level the court noted the lower court was dealing with an ineffective

17  assistance of counsel claim.  Counsel for petitioner never mentioned the Sixth Amendment of the

18  Federal Constitution in the context of his motion for discretionary review or specifically stated this

19  was a federal claim.  (Dkt. # 15, Exhibit 8).  However, counsel consistently argued the claim was an

20  ineffective assistance of counsel claim.  The Ninth Circuit has recently indicated that an explicit

21  mention of the federal right in a lower brief may suffice.  Insyxiengmay v. Morgan, 403 F.3rd 657

22  (9th Cir. 2005).

23      Respondent has failed to show the claim could have been anything but a federal claim. While

24  the claim was not specifically identified as a federal claim, it is clear from the record and cases cited

25  that the state courts considered the issue using the federal standard and this court should decline to

26  dismiss this action based on failure to exhaust.

27

28

B.    On the merits.

The Washington State Court of Appeals carefully considered this case using the correct law. Petitioner had failed to show the ruling of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  The Washington State Court of Appeals decision in this case is a model of clarity.  The proper law is identified, the facts are applied to the law and the decision is well reasoned.  The clarity of the decision is evidenced by the Supreme Courts summary dismissal of the motion for discretionary review in which the Commissioner stated:

> After throughly examining the circumstances of the identification in light of these rules, the Acting Chief Judge determined that the procedure was not impermissibly suggestive, and that even if it was, it created no substantial likelihood of irreparable misidentification.  Mr. Gaines does not show the Acting Chief Judge committed any obvious or probable error meriting this court's review.
> Accordingly, the motion for discretionary review is denied.

This court concurs with the finding that the showup was not impermissibly suggestive and that even if it was it created no substantial likelihood of misidentification.  Therefore, counsel was not ineffective in failing to bring a motion to have the evidence suppressed.

Petitioner fails to show that his counsel was ineffective under either prong of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Counsels performance was not deficient as a motion to suppress the out of court identification would have been denied.  Further, petitioner fails to show prejudice as there is no substantial likelihood of misidentification given these facts.

This petition should be **DENIED** on the merits.

## CONCLUSION

This petition fails on the merits.  The petition should be **DISMISSED WITH PREJUDICE**.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R.

1    Civ. P. 72(b), the clerk is directed to set the matter for consideration on **June 24th, 2005**, as noted in

2    the caption.

3

4

5                   DATED this 20th day of May, 2005.

6

7

8                                         /S/ J. Kelley Arnold
                                          J. Kelley Arnold
9                                         United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 10